Petitioner Ms. Santos De Sanchez is a permanent resident of the United States who is in fear of being deported to her home country. She was convicted of conspiracy to possess and distribute drugs but upon her arrest she provided enormous cooperation with the Southern District of New York and the government so the U.S. attorney concluded that the guilty pleas of the people that she helped to convict were motivated in no small part by the knowledge that if they proceeded Santos Sanchez would testify against them. One of those persons was her boyfriend a man that she lived with for many many years and that person has been deported to the Dominican Republic and Ms. Santos is in great fear that if she is also deported that she will be tortured or murdered upon her return. But the problem we have or that she has in this matter it seems to me is whether the government of the Dominican Republic is somehow complicit in that or knowingly allowing it so could you marshal for us the evidence that you should have supported or did support that determination which was not one that was made by the IJ and the BIA. Yes your honor okay. The Second Circuit has a court decision Kuzmin that describes the definition of acquiescence and remaining willfully blind to torture and the petitioner here believes that the court should not improperly use Kuzmin as a guide in making his decision okay because even though he cited the case and the board cited the case they didn't actually follow the case. When the judge was making his decision about whether Ms. de la Cruz would whether the government would be involved in any way they were looking at direct involvement. For instance there's no indication in the record that Ms. de la Cruz or any other member of the organization has connections with the government talking about direct connections. Later on the record does not lead to the conclusion that Mr. de la Cruz is laying in bed with Dominican officials whether they be politicians or corrupt police officials. In other words immigration court only looked at direct connection didn't find them and said she hadn't met her burden of proof and the board basically found this you know upheld the decision of the immigration judge. So what was she supposed to show? Well she should she was supposed to show that the government was willfully blind that it was it would look the other way. How does she show you know what evidence shows that? Well in this case we have the country conditions evidence that was provided in the case but I understand Mr. Mr. Lombardi as I understand the evidence that was submitted there was one a State Department report and there was two I think some report from Amnesty International is that is that right? And but both of those were sort of general made general comments about the state of policing in the Dominican Republic. That's correct. But none of them actually dealt specifically either with Ms. de la Cruz Ms. de Sanchez's situation or whether or not it dealt with the her alleged or former boyfriend's situation. Well it didn't deal directly with them your honor that that is true but one of the reports we issued the I mean didn't even deal indirectly with them though. Well the Amnesty International report that was filed said that there was a perception of widespread corruption. 59.2% of respondents felt the police were involved in crime. Okay further on in that same article that confirmed that the National Drug Control Department either tolerated or were complicit with setting up of drug sales points. So we're talking about somebody who was a big-time drug dealer and then we have government information that they were involved in setting up drug sales points. And that they were involved generally in crime. And you know that's again the the proof that was submitted. The decision from this court which talks about the situation in Haitian prisons for what might constitute torture and we concluded that you had to show some more direct connection than the general condition. Yet it seems as if you have to show something specific to this petitioner. Wouldn't you agree with that? Well you know in perfect world if we had gone back there with other counsel maybe there would have been a expert report that would have further delineated the connection and that wasn't submitted in this case. But you don't need just expert report you could have somebody show that there were police with Dela Cruz when he visited with her. I know there was some return to the D.R. and she saw him and he threatened her. She could have said and there were two cops from the D.R. with him at that time. You could have that kind of testimony too, right? Right, except that that wasn't the case in this in this situation. Your Honor, but I think in this this case where the court did not the result would be for this court to send it back. And tell it what? Tell it to conduct a proper analysis on the issue of acquiescence under. And what would it find on the evidence that's in the record at this time? That's that's what I'm trying to get at Mr. Lombardi. Or I'm trying to figure out. I mean I'm happy to be informed by you but what would it find other than what you've already told us? Well, I don't know what else it would find. But okay. We'd also have the opportunity to supplement the record. Okay. Thank you. You've got you've reserved three minutes for rebuttal so you'll have plenty of time to respond to Mr. Schor. We'll hear from you Mr. Schor. Thank you. Good morning, Your Honors. May it please the Court. My name is David Schor and I represent the Attorney General of the United States. The Petitioner in this matter, Ms. Santos, had a full and fair opportunity to present her claim for a cat deferral of removal, which was ultimately denied because she failed to carry her burden. The issue before the Court is whether it should dismiss her petition for lack of jurisdiction because she is subject to removal on criminal grounds and she's challenging the denial of her cat claim based on her failure to prove as a factual matter that she will more likely than not suffer torture in the Dominican Republic. This petition raises no colorable questions of law or constitutional claims subject to the Court's review. Ms. Santos didn't raise any such claims before the Board and didn't directly challenge cat deferral of removal and the denial of it before the Board. She raised this acquiescence in the context of her asylum claim, right? Yes. There is, there is, so she appealed asylum withholding of removal. There is one sentence in, in her brief on appeal that said the government isn't, failed to arrest her, her, her ex-boyfriend. Her, her brief on appeal to the BIA. Yes, yes. And then the BIA dealt with that, did it not? Yeah. The, the, the Board haven't we pretty clearly said, so I just, maybe we can get off the jurisdiction issue, but please disabuse me. Haven't we pretty clearly said that, frankly, even if the BIA pulls up an issue that isn't argued to it, that in substance, at least according to the jurisprudence of this Court, allows us to address that issue? That's correct, Your Honor. But what the Board said is that there's no clear factual error in the immigration judge's predictive finding as to the likelihood of torture. And that's an issue, a question of fact, not a constitutional claim or a question of law. And so the jurisdictional bar at 1258 U.S.C. 1252A2C applies. Because it's facts we're talking about, not law. Yes. Yes, Your Honor. Yes. Thank you. And as far as, as far as the issue of the standard applied by the immigration judge, denied the Catt claim as speculative. A Catt claim has two principal elements, harm that qualifies as torture and State action. The regulations only protect against torture by a public official or torture without an official's consent or acquiescence. There's no question but that getting abused, beat up, whacked by her boyfriend is torture, right? Forget without, I'm not talking about, but would be the kinds of acts that would constitute torture if they were sponsored by or. Certainly. Certainly. And certainly being killed would be an act of torture. Torture is defined at 1208.18A, and it's the act of harm for a prescribed purpose. And I believe retaliation is one of those purposes. But what's missing here is the State action element. The immigration judge expressly considered the willful blindness standard in finding that she failed to prove that element. He relied on Kuzam restating its holding that acquiescence is shown if the official knows or remains willfully blind to an act of torture and thereafter breaches his legal responsibility to prevent it. The immigration judge noted that she had alleged no, Ms. Santos had alleged no past difficulty with police, or that is, there was no allegation of any past failure of police to protect her, and there was no particularized evidence regarding her and the government or any official. Instead, as the immigration judge noted, she wanted him to infer that she would more likely than not suffer torture based on generalized reports of corruption. The immigration judge declined to draw that inference, and he noted that corruption was not systemic and that the government had sought to address it. And the immigration judge also relied — Sotomayor, is there any circumstance under which — I'm sorry? Is there any circumstance under which generalized evidence in the government's view, under which generalized evidence might get close enough for there to be a valid basis for a conclusion that the government might permit torture? More systemic corruption, is that what — or — I hesitate to bind the board in the future, but it would be — We'll keep it among us. Don't worry. It would be conceivable. The regulation states that, you know, all relevant information regarding a — relevant to the possibility of torture in the future should be considered in assessing, you know, whether an African has carried his or her burden. So contrary condition evidence alone could possibly, in the right case — this Court has said that, you know, particularized evidence is required. So I don't know that the board has seen a case where just generalized evidence will get you there alone, but it's not, I guess, outside the realm of possibility. But it's not this case. That's correct, Your Honor. Mr. Schor, one thing that is sort of interesting may not be the right word, but as I understand it, she was actually very helpful to the government in being able to prosecute this. And as I understand it, at least the submission that was made to the district court for purposes of her sentence, that she provided information that no one else had provided. So there's this very, very bizarre or interesting circumstance where this person who was critical to the government convicting someone is now sort of left out in the wind by the — by other aspects of the government. I mean, what — I mean, I understand it may not necessarily factor into the analysis, but was there no way for the government to figure out a way to sort of protect her from this fate? Well, under the CAT framework, right, it's her burden to prove, you know, more likely than not, torture with the government's — of the Dominican Republic, consent or acquiescence. Now, there are remedies under other provisions outside of removal proceedings that are available to individuals who have provided assistance to law enforcement in the United States. There are the ST and U visas. But that's a separate remedy available outside of these proceedings for just that situation where someone has provided assistance and could even face potential danger as a result. But that's a separate remedy not relevant to Convention Against Torture claim. Do you know if she sought an S visa in this case for cooperating? I believe in the record there was representation by prior counsel that she was pursuing it. There was — based on the information I have, there's no record of an S visa application. There was a record, I believe, of a U visa application that, as far as I know, was pending. But that's all sort of, you know, outside this — these proceedings outside of this record. Not outside of your agency. Outside — well, outside of — outside of the Executive Office for Immigration Review, the BIA and the IJ, this is with the United States Citizenship and Immigration Services, a separate division of DHS. You don't talk about these things, huh? No, unless there's, you know, an inquiry made just sort of FYI. But no, that — As Judge Bolden just pointed out, I think the conviction in this case arose from the same drug trafficking conspiracy, right? In other words, she was indicted along with the person she's afraid of in the same conspiracy. She pled guilty, probably got the benefit of a 5K in that, and probably got some benefit from that in her sentencing. Those are kind of traditional S visa type of situations, right? Where you know she's going to be deported back to the same place that the guy who's threatening to kill her is waiting for. Well, it may be, Your Honor. I'm really not an expert on an S visa. And seeing it in this record was my first — it was actually my first time encountering S visas. And she's certainly free to pursue that outside of the removal proceedings and has been all along. And maybe — or the record only indicates the application for a U visa. We'll ask Mr. Lombardi if he — Well, yes. Yes, Your Honor. But that's outside the — No, I understand. I understand. And last, I just want to very quickly touch upon the Court's question regarding generalized evidence of police ineffectiveness in dealing with crime. The regulations place the burden squarely on the applicant to prove the State action element. And so there is no sort of inference that arises just from police inaction. The Board has never adopted or applied such a rule, and, of course, there could be many reasons why police might be ineffective that have nothing to do with acquiescence to torture. And this Court should not impose such a rule in the first instance where the Board has not articulated it. It would intrude on the Board's authority to interpret and apply the statute in the first instance. And this case is particularly inappropriate because the issue was not presented to the Board in the first instance. For all of these reasons, the Court should dismiss this petition for review. Thank you, Your Honors. Thank you, Mr. Schor. Mr. Lombardi, you've reserved some time for rebuttal. Thank you, Your Honor. Maybe just since we three are curious about this, is there anything you can tell us? I understand it's extra record, but about the visa application process that she might be engaged in. She has other counsel regarding the U visa. It is my understanding that it was denied, but I am not 100 percent certain. Thank you. I just want to go over the issue of generalized problems in the country and generalized evidence. Because if the Court takes a very, very narrow view, like here we have, there's some, the judge cited several attempts at internal restructuring and reform. So there's some nice words from the government that they're trying to do something. But if we make that sufficient to negate all of the negative things that are happening on the ground, we're basically giving these governments no incentive to do anything and every incentive to just fig leaf over their internal activities and problems. And, you know, I think that the whole purpose of the Convention Against Torture is to protect people just like this petitioner. Although I'm not sure that our interpretation of whatever they may or may not be doing in the Dominican Republic is going to give them any added incentive to get better at what they're doing or what they're supposed to be doing, particularly in the context of an essentially an asylum application or a cat claim application. I mean, we've got some jurisprudence that we have to follow as well. That's it, Your Honor. Okay. Thank you both. We'll reserve decision and get you a determination in due course. Thank you.